Minute Order Form (06/97)

## United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6027 | **DATE** | 7/9/2001 |
| **CASE TITLE** | The Provident Bank vs. Pauline Wright | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant has raised three affirmative defenses, which plaintiff now moves to dismiss. The motion to dismiss the first and second affirmative defenses is granted. The motion to dismiss the third affirmative defense is granted, with leave to raise the claim by amendment within 21 days. Status hearing set for August 21, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 11 200? | |
| | Notified counsel by telephone. | | date docketed | 17 |
| ✓ | Docketing to mail notices. | | /s/ | |
| | Mail A 450 form. | 00-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 01 JUL 10 PM 12: 02 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE PROVIDENT BANK,           )
                              )
            Plaintiff,        )
                              )
      vs.                     )   No. 00 C 6027
                              )
PAULINE WRIGHT,               )
                              )
            Defendant.        )

DOCKETED
JUL 1 1 2001

MEMORANDUM OPINION AND ORDER

Plaintiff seeks to foreclose on a mortgage. Defendant has raised three affirmative defenses, which plaintiff now moves to dismiss. We therefore set forth a version of the facts most favorable to defendant before considering the sufficiency of those defenses.

According to defendant, her mother owned the residence but could not meet the mortgage payments because of health problems. As a result, it went into foreclosure. Plaintiff, who was living there with children and grandchildren, and had become employed, agreed in October 1999, to purchase the home from her mother for the outstanding mortgage balance, some $98,767.44. She went to a mortgage broker, Equity Express, which completed a loan application for her and submitted it to a division of the Provident Bank. That application asked for a loan of $116,000.00 at 12.125%. It indicates that the estimated prepaid items are $1,938.85, the estimated closing costs are $8,046.00, and the prior mortgage was $98,767.44, leaving $7,247.71 available as cash. The application purports to have been completed by an employee of plaintiff. The application is dated November 4, 1999, the date of the mortgage, although defendant appears to allege that it in fact was submitted in October. At the same time that defendant's application was completed, Equity Express furnished to defendant a Mortage Loan Origination Agreement which represented that the lender would pay Equity

/7

Express $2,320.00 on defendant's behalf, and that defendant would not have to pay anything to the broker, while indicating that the actual compensation could be more or less and would be disclosed on the HUD-1 Settlement Agreement at closing.

On October 29, 1999, plaintiff sent a number of documents to defendant, including a Good Faith Estimate. The covering letter states that the Good Faith Estimate is based on a range of costs required by providers and that she would be provided with the names of the specific providers and actual cost at closing. In a Truth-in-Lending Statement the APR is set forth at 12.3217%. The Good Faith Estimate listed estimated settlement charges of $2,669.00, estimated prepaid charges of $1,772.00, payoff of $98,767.44 and estimated cash to borrower of $12,791.48. A $2,320.00 Service Provider Fee to Equity Express is noted but is not included in the expense totals. A proposed interest rate is specified at 12.125%. The estimated settlement and prepaid charges are preceded by a statement that includes the following: "The fees listed are estimates - the actual charges may be more or less .... The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement."

At closing on November 4, 1999, defendant received, and acknowledged in writing receiving, a Truth-in-Lending Disclosure Statement. In that statement the APR is 13.1080%. While a number of specific expense items are added, deleted or changed from the prior Truth-in-Lending Statement and Good Faith Estimate, resulting in a lower total for those expenses, it includes a significant increase: a broker fee of $6,960.00. It specifies a total amount financed of $107,189.97 on a $116,000.00 loan, but, defendant alleges, she received only approximately $225.00 cash proceeds. Defendant also signed a different Mortgage Loan Origination Agreement, this one specifying that she was to pay $6,960.00 to Equity Express and the lender was to pay $2,320.00 on her behalf, for a total compensation to Equity Express of $9,280.00.

Defendant soon fell behind on her mortgage payments, which she claims was due to her mother's medical expenses and increased mortgage payments (the first Truth-in-Lending Statement and the Good Faith Estimate specified a monthly payment of $1,204.36 but did not include taxes and insurance, while the later Truth-in-Lending did include those items, which clearly had to be paid by defendant either directly or through her monthly mortgage payments). Plaintiff seeks to foreclose. Defendant resists, claiming that plaintiff has violated the Illinois Consumer Fraud and Deceptive Practices Act (ICFDPA), is guilty of common law fraud, and has failed to follow the Equal Credit Opportunity Act. Plaintiff moves to dismiss each of those defenses.

The basis for the motion to dismiss the ICFDPA and common law fraud claims is, ultimately, that defendant was advised well in advance of the closing that the figures were soft and subject to change, that she was furnished with accurate figures at the closing, and that she chose to go ahead. Therefore, plaintiff contends, she cannot establish that she was deceived and it was not reasonable for her to rely on the pre-closing representations.

But that we cannot decide on a motion to dismiss. Defendant alleges that the residence was already in foreclosure proceedings. We can infer that she had little choice other than to go ahead when she attended the closing. The ICFDPA does not require actual reliance, and "bait and switch" allegations are enough for a claim under that statute. Garcia v. Overland Bond & Investment Co., 218 Ill.Dec. 36, 668 N.E.2d 199 (Ill.App. 1 Dist. 1996). While we recognize that, for a common law fraud claim, the absence of reasonable reliance can sometimes be established by the pleadings alone, we think the circumstances alleged here present an issue of fact. Here the broker fee was not just a little soft. It was affirmatively represented not to be owed at all. Further, if defendant is correct that she received only

approximately $250.00 in cash, there appears to be a substantial discrepancy between the amount of the loan and the amounts paid out.

Plaintiff is on sounder ground in attacking the Equal Credit Opportunity Act (ECOA) claim as an affirmative defense. It may well be a proper affirmative defense in some situations, such as a suit to recover on a guarantee illegally procured through marital discrimination, but a violation does not invalidate the underlying debt, <u>Silverman v. Eastrich Multiple Investor Fund, L.P.</u>, 51 F.3d 28 (3d Cir. 1995). A claimed ECOA violation can, however, be pursued as an independent counterclaim.

The motion to dismiss the first and second affirmative defenses is granted. The motion to dismiss the third affirmative defense is granted, with leave to raise the claim by amendment within 21 days.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 9, 2001.